'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LVDV Holdings, LLC,

        Plaintiff,

   v.

Jabari Shelton,

        Defendant.

CV 22-5921-RSWL-PDx

**ORDER re: MOTION TO DISMISS [22], MOTION TO STRIKE [24], AND REQUEST FOR JUDICIAL NOTICE [23]**

    Plaintiff LVDV Holdings, LLC ("Plaintiff") brought the instant Action against Defendant Jabari Shelton ("Defendant") alleging false designation of origin and unfair competition, common law trademark infringement, federal trademark infringement, and counterfeiting. Currently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Motion to Strike, and Request for Judicial

1

1  Notice [22, 23, 24].

2     Having reviewed all papers submitted pertaining to

3  this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**

4  the Court **DENIES** in part Defendant's Motion to Dismiss,

5  **GRANTS** in part Defendant's Motion to Dismiss **with leave**

6  **to amend,** and **GRANTS** Defendant's Motion to Strike **with**

7  **leave to amend.**

8                    I.    BACKGROUND

9  **A.    Factual Background**

10     Plaintiff alleges the following in its FAC:

11     Plaintiff is a well-known streetwear brand that

12  owns rights in apparel bearing the V-Logo mark, VLONE-

13  logo mark, and VLONE word mark (collectively, the "VLONE

14  marks").  See generally FAC, ECF No. 18; Id. ¶¶ 52-53.

15  Defendant originally owned the rights to the VLONE marks

16  and first used them in commerce in April 2012.  Id.

17  ¶¶ 16-17.  Defendant later assigned the rights in the

18  VLONE marks to Plaintiff in 2020.  Id. ¶ 17.  Plaintiff

19  licensed the VLONE marks to Defendant, but now,

20  Defendant is a "former" licensee.  Id. ¶¶ 16, 56.  The

21  Parties had an oral licensing agreement in which

22  Plaintiff licensed Defendant to use and sublicense the

23  VLONE marks.  Id. ¶¶ 56, 69.  Plaintiff does not state

24  when Defendant's license terminated.  Plaintiff's owner,

25  So Hunter, assisted Defendant in making, selling and

26  marketing clothing bearing the VLONE marks while

27  Defendant was licensing those marks.  Id. ¶ 63.

28  Moreover, under this agreement, Defendant was required

to pay all revenues related to the use, licensing, and sublicensing to an entity called VLONE Holdings, LLC ("VHL").  Id.

In 2021, Defendant took $200,000 out of VHL's bank account without authorization.  Id. ¶ 76.  Around this time, Defendant falsely represented that he was the owner of the VLONE marks and entered contracts giving various recording artist and enterprises licenses and/or authority to use the VLONE marks without Plaintiff's permission.  Id. ¶¶ 78-79, 84-86.  Indeed, Defendant even formed a business called Endless Circle Denim LLC ("ECD"), which he used to enter into at least one contract to license the VLONE marks.  Id. ¶¶ 139-144. By entering these contracts, Defendant aided in the creation of counterfeit products that compete with Plaintiff's products.  Id. ¶¶ 81; 131-33.

B. **Procedural Background**

Plaintiff filed a Complaint [1] on August 19, 2022. Defendant then filed a Motion to Dismiss [15] on November 21, 2022.  Plaintiff filed its First Amended Complaint ("FAC") on November 29, 2022.  And Defendant subsequently filed another Motion to Dismiss [22] along with a Motion to Strike Paragraphs 148-153 of the FAC [24], and a Request for Judicial Notice [23] on December 13, 2022.  On January 3, 2023, Plaintiff filed its Oppositions to Defendant's Motions to Dismiss [29] and Strike [30], and to Defendant's Request for Judicial Notice [31].  On January 10, 2023, Defendant filed

3

1  Replies in support of its Motions to Dismiss [35] and
2  Strike [34], as well as to its Request for Judicial
3  Notice [36].

**II.   DISCUSSION**

**A.   <u>Legal Standard</u>**

1.   <u>Motion to Dismiss: Rule 12(b)(6)</u>[1]

Federal Rule of Civil Procedure ("Rule") 12(b)(6)
allows a party to move for dismissal of one or more
claims if the pleading fails to state a claim upon which
relief can be granted.  A complaint must "contain
sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation
omitted).  Dismissal is warranted for a "lack of a
cognizable legal theory or the absence of sufficient
facts alleged under a cognizable legal theory."
<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699
(9th Cir. 1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may
generally consider only allegations contained in the

---

[1] Defendant moves to dismiss Plaintiff's claims for lack of
standing under 12(b)(1).  While questions of Article III standing
are analyzed under the 12(b)(1) standard for lack of subject
matter jurisdiction, questions of lack of statutory standing are
analyzed under the 12(b)(6) standard for failure to state a
claim.  <u>See</u> <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1067 (9th Cir.
2011).  Accordingly, the Court assesses Defendant's arguments
that Plaintiff does not have standing under section 32(1) of the
Lanham Act and California common law under the 12(b)(6) standard.
<u>See</u> <u>Lasco Fittings, Inc. v. Lesso Am., Inc.</u>, No. EDCV 13-02015-
VAP (DTBx), 2014 WL 12601016, at 2 (C.D. Cal. Feb. 21, 2014).

4

pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); see also White v. Mayflower Transit, LLC, 481 F. Supp. 2d 1105, 1107 (C.D. Cal 2007), aff'd sub nom. White v. Mayflower Transit, L.L.C., 543 F.3d 581 (9th Cir. 2008) ("unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials").  A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  While a complaint need not contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

2.  <u>Motion to Strike</u>

Rule 12(f) provides that a court may, by motion or on its own initiative, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010) (quoting <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994)).  "Motions to strike are generally disfavored."  <u>Leghorn v. Wells Fargo Bank, N.A.</u>, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013) (citation omitted); <u>see also</u> <u>Sapiro v. Encompass Ins.</u>, 221 F.R.D. 513, 518 (N.D. Cal. 2004) ("Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations.").

"In ruling on a motion to strike under Rule 12(f), the court must view the pleading in the light most favorable to the nonmoving party."  <u>Cholakyan v. Mercedes-Benz USA, LLC</u>, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).  "[B]efore granting such a motion . . . the court must be satisfied that there are no questions of fact, that the [claim or] defense is insufficient as a matter of law, and that under no

1    circumstance could [it] succeed." Id. "[C]ourts

2    frequently require the moving party to demonstrate

3    prejudice before granting the requested relief, and

4    ultimately whether to grant a motion to strike falls on

5    the sound discretion of the district court." Cook v.

6    Cnty. of Los Angeles, No. CV 19-2417 JVS (KLSx), 2021 WL

7    1502704, at *2 (C.D. Cal. Mar. 31, 2021).

8    **B.   Discussion**

9        1.   Judicial Notice

10       Defendant requests the Court take judicial notice

11   of:[2] (1) archived pages of the Vlone website between

12   September 19, 2020, and August 31, 2022, accessible

13   through the Internet Archive's Wayback Machine; (2) the

14   applications, specimens, and assignments filed with the

15   U.S. Patent and Trademark Office for the three Vlone

16   Marks, downloaded from the U.S. Patent and Trademark

17   Office; (3) press releases and news articles detailing

18   Defendant's founding of the Vlone brand; (4) the

19   Articles of Organization of LVDV Holding, LLC; and

20   (5) the U.S. Patent and Trademark Office Courtesy

21   Reminder of Required Trademark Registration Maintenance

22   Filing Under Section 8 for the "VLONE Word Mark,"

23   downloaded from the U.S. Patent and Trademark Office.

24   Def.'s Req. for Judicial Notice ("RJN"), ECF No. 23;

25   Id., Exs. 1-5, ECF Nos. 23-1, 23-2, 23-3.

26

27       [2] The documents are attached to the Request for Judicial
     Notice as exhibits and are referred to here by their exhibit

28   number.

A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may also take judicial notice of administrative bodies' records and reports.  Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

The Court **GRANTS** Defendant's requests with respect to items (2), (4), and (5), as trademark registrations, publicly available documents from the U.S. Patent and Trademark Office, and articles of incorporation are all properly subject to judicial notice.  See Dep't of Parks & Recreation v. Harper, No. CV 05-2008 DSF (JWJx), 2006 WL 8434676, at *3 (C.D. Cal. Apr. 25, 2006) (quoting Vitek Sys., Inc. v. Abbott Labs., 675 F.2d 190, 192 n.3 (8th Cir. 1982)) ("[T]he 'court may take judicial notice of Patent and Trademark Office documents.'"); Horn v. Azusa Pac. Univ., No. 218CV09948CASPLAX, 2019 WL 9044606, at *5 (C.D. Cal. Jan. 14, 2019) (taking judicial notice of a corporation's articles of incorporation).

The Court **DENIES as moot** Defendant's request as to items (1) and (3), as the Court does not rely on those documents in reaching its decision.  See Flate v. Mortg. Lenders Network USA, Inc., No. CV 15-08873-AB (FFMx), 2016 WL 9686051, at *4 (C.D. Cal. Mar. 4, 2016) (denying

8

as moot a request for judicial notice where "the [c]ourt did not rely on any documents in . . . its ruling").

2. 12(b)(6)

a. Standing

Defendant argues that the assignment of the VLONE marks to Plaintiff was invalid, and therefore Plaintiff has no standing to sue for trademark infringement and related claims. See generally Mot. Section 32(1) of the Lanham Act allows only a "registrant" to bring a civil action under that section for any of the forms of trademark infringement made unlawful therein. 15 U.S.C. § 1114(1) ("Any person who shall, without the consent of the registrant . . . [commit any of several infringement offenses] shall be liable in a civil action by the registrant for the remedies hereinafter provided."). "Registrant" includes the registrant's "legal representatives, predecessors, successors, and assigns." Id. § 1127 (defining "registrant").

"There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed." United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97-98(1918). A trademark is therefore "assignable [only] with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." 15 U.S.C. § 1060. A "naked" or "in gross" transfer of a mark, i.e., without the associated

9

1   goodwill, is invalid. See Visa, U.S.A., Inc. v.
2   Birmingham Trust Nat'l Bank, 696 F.2d 1371, 1375
3   (Fed. Cir. 1982).

4       "Goodwill" has been generally described as "the
5   advantage or benefit, which is acquired by an
6   establishment, beyond the mere value of the capital,
7   stock, funds, or property employed therein, in
8   consequence of the general public patronage and
9   encouragement which it receives from constant or
10  habitual customers." Newark Morning Ledger Co. v.
11  United States, 507 U.S. 546, 555 (1993). Goodwill must
12  accompany the assignment of a trademark "to maintain the
13  continuity of the product or service symbolized by the
14  mark and thereby avoid deceiving or confusing
15  customers." Gallo Winery, 967 F.2d at 1289 (citing 1 J.
16  THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §
17  18:1(C)). A mere recitation in the assignment agreement
18  "that the mark was assigned 'together with the good will
19  of the business symbolized by the mark'" is not
20  sufficient to establish a valid transfer. Money Store
21  v. Harriscorp Fin., Inc., 689 F.2d 666, 676 (7th Cir.
22  1982).

23      Courts often assess whether there has been a
24  transfer of goodwill by whether the assignee offers
25  goods substantially similar to, or of the same nature
26  and quality as, the goods previously associated with the
27  mark. Visa, U.S.A., Inc., 696 F.2d at 1376; Archer
28  Daniels Midland Co. v. Narula, No. 99 C 6997, 2001 WL

804025, at *6-7 (N.D. Ill. July 12, 2001).  Indeed, an
assignee's failure to "set forth factual allegations
tending to show that [it] maintained actual control
sufficient to ensure continuity of the mark" serves as
grounds to dismiss trademark infringement claims.
Parkinson v. Robanda Int'l, Inc., 641 F. App'x 745, 747
(9th Cir. 2016).  Importantly, "information sufficient
to enable [the assignee] to continue" the business that
the assignor was conducting prior to the assignment may
constitute a transfer of goodwill.  See Gallo, 967 F.2d
at 1289.

     Here, Plaintiff adequately alleged that it obtained
the goodwill necessary to confer standing.  Indeed,
Plaintiff states that prior to the assignment, its sole
owner, So Hunter, assisted Defendant in making, selling,
and marketing clothing bearing the VLONE marks.  FAC
¶ 63.  Plaintiff thus contends that its owner is
familiar with the marketing and trade channels for
products bearing the VLONE marks.  Id. ¶¶ 61-62.
Accordingly, Plaintiff states that its owner "has
sufficient knowledge and information to continue the
business using the VLONE marks."  Id. ¶ 64.  These
contentions are sufficient to show that Plaintiff
received the goodwill associated with the VLONE marks,
and thus received a valid assignment.  See Gallo,
967 F.2d at 1289.  Therefore, at this stage of
litigation, Plaintiff's allegations are adequate to show
that Plaintiff has standing to bring this claim.  See

1   <u>Klarfeld</u>, 944 F.2d at 585 (holding that a court must

2   presume all factual allegations of the complaint to be

3   true and draw all reasonable inferences in favor of the

4   non-moving party on a motion to dismiss).[3]

5             b.   <u>Claims One, Two, and Three: False</u>

6                  <u>Designation of Origin, Trademark</u>

7                  <u>Infringement, and Unfair Competition</u>

8        Plaintiff brings claims of false designation of

9   origin, trademark infringement, and unfair competition

10  under 15 U.S.C. § 1125(A), 15 U.S.C. § 1114(1), and

11  California law.  <u>See generally</u> FAC.

12       This Court analyzes these claims together for the

13  purposes of this Motion.  "[T]he courts have uniformly

14  held that common law and statutory trademark

15  infringement are merely specific aspects of unfair

16  competition."  <u>Hokto Kinoko Co. v. Concord Farms, Inc.</u>,

17  810 F.Supp.2d 1013, 1031 (C.D. Cal. 2011) (citing <u>New W.</u>

18  <u>Corp. v. NYM Co. of Cal., Inc.</u>, 595 F.2d 1194, 1201 (9th

19  Cir.1979)); <u>see also</u> <u>Grey v. Campbell Soup Co.</u>, 650 F.

20

21       [3] Since Plaintiff alleges that Defendant licensed the VLONE
    marks after the assignment, it is possible that there could also
22  be an "assignment/license-back" agreement—a transaction in which
    Company A assigns a trademark to Company B, but continues to
23  utilize the trademark under a license with Company B.  <u>Gallo</u>, 967
    F.2d at 1290.  Such arrangements can serve to prevent the
24  disruption of the "continuity of the products or services
    associated with a given mark," and therefore preserve the
25  goodwill of the marks.  <u>Id.</u> at 1289–90.  Nonetheless, since the
    Court determines that Plaintiff has adequately pled it received
26  the goodwill of the marks and has standing, the Court declines to
    address whether the parties established a valid
27  assignment/license-back agreement.

28

Supp. 1166, 1173 (C.D. Cal. 1986) ("The tests for
infringement of a federally registered mark under
§ 32(1), 15 U.S.C. § 1114(1), infringement of a common
law trademark, unfair competition under § 43(a),
15 U.S.C. § 1125(a), and common law unfair competition
involving trademarks are the same").  A claim for false
designation of origin under 15 U.S.C. § 1125 requires
proof of the same elements as a claim for trademark
infringement under 15 U.S.C. § 1114.  Brookfield
Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036,
1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. §§ 1114(1) &
1125; AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348
(9th Cir. 1979)).

Furthermore, the Ninth Circuit "has consistently
held that state common law claims of unfair
competition . . . are 'substantially congruent' to
claims made under the Lanham Act." Cleary v. News
Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citing
Academy of Motion Picture Arts & Scis. v. Creative House
Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991)).

To prove a claim of trademark infringement, a
plaintiff must show: (1) that it has a valid,
protectable trademark, and (2) that defendant's use of
the mark is likely to cause confusion.  Applied Info.
Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969
(9th Cir.2007) (citing Brookfield Commc'ns, 174 F.3d
at 1047, 1053).

Defendant contends that Plaintiff has not stated a claim because Defendant had a license to use the marks, and Plaintiff's claims are improperly based on Defendant's alleged failure to pay VHL revenues.  Mot. 20:15-27.  Plaintiff, on the other hand, argues that the Parties entered an agreement providing that Defendant could use/sublicense the VLONE marks, and that Defendant was to have all resulting revenues paid to VHL, where the revenues would presumably be split between Defendant, Plaintiff's owner, and a third party.  FAC ¶¶ 69, 72.  Plaintiff argues that Defendant's uses of the VLONE marks were unauthorized insofar as he failed to pay the revenues obtained from those uses to VHL. Id. ¶¶ 76-146.

It is well established that when a license ends, a former licensee's continued use of the relevant marks constitutes infringement.  See, e.g., Hambrecht Wine Grp., L.P. v. Millennium Imp. LLC, No. C 05-04625 JW, 2007 WL 9760162 (N.D. Cal. Apr. 26, 2007); see also Microban Prods. Co. v. API Indus., Inc., No. 14 Civ. 41 (KPF), 2014 WL 1856471, at *6 (S.D.N.Y. May 8, 2014) (stating that "likelihood of confusion is established as a matter of law" where "an ex-licensee continues to use a mark after its license expires.").  Moreover, when a licensee's use of marks exceeds the scope of the licensor's consent established in the license, that use constitutes an unauthorized use.  See Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc., 557 F. Supp. 2d 1134,

1141-42 (S.D. Cal. 2008).  For instance, in <u>Lee Myles</u>,
the license provided that the licensee could use the
relevant marks only in connection with a preexisting
franchise business, and any other uses had to be
approved in writing by the licensor.  <u>Id.</u>  Therefore,
the licensor's allegations that its consent did not
extend to the licensee's use of the marks to facilitate
their own separate business established a valid
infringement claim.  <u>Id.</u>

    Here, while not as explicitly set forth as in the
<u>Lee Myles</u> written license, Plaintiff alleges that the
parties agreed that Defendant would place all revenues
from his use of the VLONE marks into VHL.  Plaintiff
further contends that the Defendant's failure to place
revenues into VHL renders the connected uses of the
VLONE marks "unauthorized."  Consequently, Plaintiff has
adequately stated claims for trademark infringement,
false designation of origin, and unfair competition.

             c.   <u>Claim Four: Counterfeiting Under 15 U.S.C.</u>
                  <u>§ 1117</u>

    A counterfeiting claim under "Section 1116(d)
requires that the mark in question be (1) a non-genuine
mark identical to the registered, genuine mark of
another, where (2) the genuine mark was registered for
use on the same goods to which the infringer applied the
mark."  <u>Louis Vuitton Malletier, S.A. v. Akanoc</u>
<u>Solutions, Inc.</u>, 658 F.3d 936, 946 (9th Cir.2011); <u>see</u>
<u>also Partners for Health & Home, L.P. v. Seung Wee Yang</u>,

No. CV 09-07849, 2011 WL 5387075, at *8 (C.D. Cal. Oct. 28, 2011) ("Trademark infringement under 15 U.S.C. § 1114(1) also constitutes trademark counterfeiting when the infringer uses a 'counterfeit mark,' which is defined as 'a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use . . . .'  15 U.S.C. § 1116(d)(1)(B)(I).").

Plaintiff argues that Defendant is liable for trademark counterfeiting because Defendant used the VLONE marks without authority.  See generally FAC. Plaintiff states that Defendant "willfully and without authorization directly or indirectly [made] products" bearing Plaintiff's mark and Defendant is "liable for willfully counterfeiting Plaintiff's" marks.  FAC ¶¶ 195-200.  Such assertions, however, are bare allegations and formulaic recitations of the cause of action, insufficient to state a claim.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The issue before the Court is whether a mark becomes counterfeit due to unauthorized use.

The Ninth Circuit has held that a former licensee can be held liable for counterfeiting in the context of certification marks.  See Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 720-22 (9th Cir. 2005).  But the Ninth Circuit was careful to clarify that "[a] certification mark is a special creature for a

purpose uniquely different from that of an ordinary
trademark or service mark." Id. at 716 (citing 3
MCCARTHY ON TRADEMARKS, § 19:91 (4th ed. 2005)).  And,
conversely, courts have found that licensees continuing
to use a mark after authorization terminated could not
be liable for counterfeiting, as the marks were not
"counterfeit."  See Meineke Franchisor SPV LLC v. Atta,
No. SACV 18-1205-JVS(ADSx), 2019 WL 1751840, at *5 (C.D.
Cal. Mar. 19, 2019); see also U.S. Structures Inc. v.
J.P. Structures, Inc., 130 F.3d 1185, 1192 (6th Cir.
1997) ("We agree with defendants that § 1117(b) does not
apply where, as in this case, a [former] franchisee
continues to use the franchisor's original trademark
after the franchise has been terminated.  Although the
use of an original trademark is without authorization,
it is not the use of a counterfeit mark . . . .");
Pennzoil-Quaker State Co. v. Smith, No. 2:05CV1505, 2008
WL 4107159, at *20-22 (W.D. Pa. Sept. 2, 2008) (holding
that a former licensee's use of genuine marks did not
constitute counterfeiting).

     Here, Plaintiff has not pled a claim for
counterfeiting.  Plaintiff has failed to show that
Defendant used counterfeit marks, and any unauthorized
use of Plaintiff's marks does not make the marks in
question "counterfeit."  Therefore, the Court should
**GRANT** Defendant's Motion to Dismiss Plaintiff's
Counterfeiting claim.
///

1      d.   Leave to Amend

2           "Where a motion to dismiss is granted, a district

3      court must decide whether to grant leave to amend."

4      Winebarger v. Pennsylvania Higher Educ. Assistance

5      Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).

6      "The court should give leave [to amend] freely when

7      justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the

8      Ninth Circuit, "Rule 15's policy of favoring amendments

9      to pleadings should be applied with 'extreme

10     liberality.'"  United States v. Webb, 655 F.2d 977, 979

11     (9th Cir. 1981).  Against this extremely liberal

12     standard, the Court may consider "the presence of any of

13     four factors: bad faith, undue delay, prejudice to the

14     opposing party, and/or futility."  Owens v. Kaiser

15     Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.

16     2001).

17          The Court should grant leave to amend because

18     Plaintiff can plead additional facts to support its

19     counterfeiting claim.  There is no evidence of bad faith

20     or undue delay by Plaintiff, nor potential prejudice to

21     Defendant by allowing amendment.  The Court therefore

22     **GRANTS** Defendant's Motion to Dismiss Plaintiff's

23     counterfeiting claim **with leave to amend.**

24     3.   Motion to Strike

25          Defendant seeks to strike paragraphs 148 through

26     153 in the FAC on grounds that they are redundant,

27     immaterial, impertinent, or scandalous.  Motions to

28     strike may be granted if "it is clear that the matter to

1   be stricken could have no possible bearing on the

2   subject matter of the litigation." LeDuc v. Kentucky

3   Central Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal.

4   1992).

5       An "impertinent" allegation is neither responsive

6   nor relevant to the issues involved in the action and

7   which could not be put in issue or given in evidence

8   between the parties. Wilkerson v. Butler, 229 F.R.D.

9   166, 170 (E.D. Cal. 2005). An "impertinent" matter

10  consists of statements that do not pertain and are

11  unnecessary to the issues in question. Id. A

12  "scandalous" matter improperly casts a derogatory light

13  on someone, usually a party. Id. Allegations may be

14  stricken as scandalous if the matter bears no possible

15  relation to the controversy or may cause the objecting

16  party prejudice. Id.

17      Here, the Court should strike the allegations in

18  paragraphs 148 through 153. Plaintiff recounts how in

19  2018, Defendant was arrested in England for two counts

20  of sexual assault, which he later pled guilty to in

21  2019. FAC ¶¶ 148-49. Plaintiff contends that these

22  incidents resulted in the cancellation of an agreement

23  wherein Nike was to use the VLONE marks, and therefore

24  Defendant's actions harmed the reputation of the VLONE

25  marks. Id. ¶ 150-51, 153. On the face of the FAC,

26  however, it is unclear how any harm caused to the VLONE

27  marks' reputation approximately one to two years prior

28  to Plaintiff's purported assignment of rights in the

marks is relevant to Plaintiff's claims that Defendant infringed upon Plaintiff's post-assignment rights.

Indeed, in its FAC Plaintiff does not adequately connect these factual allegations to any of its claims for relief.  Moreover, these allegations could cause Defendant, the objecting party, prejudice.  In its Opposition, Plaintiff argues that it raises these facts in anticipation of Defendant later raising a defense of inadequate consideration.  See Pl.'s Opp'n to Def.'s Mot. to Strike 2:21-26, ECF No. 30.  But speculation as to the precise reason the Nike agreement was lost need not be shared in anticipation of such a defense.  And Plaintiff can cure its FAC while still addressing a possible lack of consideration defense.  When amending its FAC, Plaintiff is free to explain without including inflammatory, unnecessary detail, that while Defendant was in control of the VLONE marks, a Nike agreement fell through and that may have impacted the consideration exchanged for the VLONE marks.  Accordingly, the Court **GRANTS** Defendant's motion to strike the allegations in paragraphs 148 through 153 **with leave to amend.**

///
///
///
///
///
///
///

20

### III.   CONCLUSION

Based on the foregoing, the Court **DENIES** in part Defendant's Motion to Dismiss, **GRANTS** in part Defendant's Motion to Dismiss **with leave to amend**, and **GRANTS** Defendant's Motion to Strike **with leave to amend.**

**IT IS SO ORDERED.**

DATED: May 2, 2023

_____
/S/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**

Senior U.S. District Judge

21